JANE RIDER, as Administratrix of GEORGE H. RIDER, Deceased, Respondent, *v.* SYRACUSE RAPID TRANSIT RAILWAY COMPANY, Appellant.

1. APPEAL — EXTENT OF REVIEW — UNANIMOUS AFFIRMANCE. Only questions raised by the exceptions to the charge of the trial judge as made, or to his refusal to charge as requested, are presented by an appeal from a judgment entered upon a verdict unanimously affirmed by the Appellate Division; the sufficiency of the evidence to support a party's theory of the facts cannot be considered.

2. NEGLIGENCE — PERSONAL INJURY — PROXIMATE CAUSE. The doctrine that a remote negligent act of the injured party does not bar a recovery for the injury is not applicable when one drives upon the track in front of an electric car approaching at a rate of from six to nine miles an hour and is fatally injured in the resulting collision, where the motorman did not act willfully or carelessly, although the wagon was carried some distance along the track before it was overturned and the injuries inflicted, since the act of the driver and the conduct of the motorman were substantially concurrent so that the conduct of the injured party in driving upon the track cannot be separated from the injury itself.

3. SAME. In determining whether the cause of an accident is proximate or remote, the same test must be applied to the conduct of both parties.

4. SAME. The act of a driver who negligently goes upon the track in full view of a rapidly approaching car is at least one of the proximate causes of a resulting collision, and the accident may be properly attributed to it and a recovery defeated, although the vehicle was carried some distance along the track before it was overturned and the injuries inflicted.

5. ELECTRIC RAILWAY — WHEN RULE AS TO WILLFUL INJURY NOT APPLICABLE. The rule that a railroad company may not run a train into

a person, though he is on the track through his own negligence, is not applicable where a driver attempts to cross the track diagonally when an approaching electric car is so near as to render the attempt dangerous.

*Rider* v. *Syracuse R. T. Ry. Co.,* 64 App. Div. 624, reversed.

(Argued April 4, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 15, 1901, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles E. Spencer* for appellant. The trial court committed error in refusing to charge the jury "that at the place where this accident occurred the rule of law which applies with reference to intersecting streets did not apply, and that at this place defendant had a paramount or superior right to the use of the street upon that portion occupied by its tracks for the operation of its cars." (*Rosenblatt* v. *B. H. R. R. Co.,* 26 App. Div. 600; *Adolph* v. *C. P., N. & E. R. R. R. Co.,* 76 N. Y. 530; *O'Neil* v. *D. D., E. B. & B. R. R. Co.,* 129 N. Y. 125; *Fleckenstein* v. *D. D., E. B. & B. R. R. Co.,* 105 N. Y. 655; *Fenton* v. *S. A. R. R. Co.,* 126 N. Y. 625; *Meyer* v. *B. H. R. R. Co.,* 9 App. Div. 79; *Hickman* v. *N. E. Ry. Co.,* 36 App. Div. 376; *Hewlett* v. *B. H. R. R. Co.,* 63 App. Div. 423.) The trial court committed error in refusing to charge the jury "that at the place where Mr. Rider started to cross the tracks he had no right to assume that the defendant's car would stop or slacken its speed for the purpose of permitting him to cross." (*Harvey* v. *N. E. R. R. Co.,* 35 App. Div. 307; *McClain* v. *B. C. R. R. Co.,* 116 N. Y. 459; *Reiss* v. *M. S. Ry. Co.,* 28 Misc. Rep. 198; *Williamson* v. *M. S. Ry. Co.,* 29 Misc. Rep. 324.) The trial court committed error in charging the jury in substance that if the car was from thirty-five to eighty feet back

when Rider started to cross the track he was chargeable with knowledge that it was there, and if he had reasonable ground to suppose he could cross the track in safety, he would not be chargeable with contributory negligence as a matter of law; because such charge permits the jury to find that Mr. Rider committed an error of judgment only, when in fact he was negligent in failing to qualify himself for the exercise of his judgment. (*McClain* v. *B. C. R. R. Co.*, 116 N. Y. 459; *Thompson* v. *B. Ry. Co.*, 145 N. Y. 196; *Davenport* v. *B. C. R. R. Co.*, 100 N. Y. 632; *Barker* v. *Savage*, 45 N. Y. 191; *Cowan* v. *T. Ave. R. Co.*, 1 N. Y. Supp. 612; *Doyle* v. *A. Ry. Co.*, 5 App. Div. 601; *Van Patten* v. *S. S. R. Co.*, 80 Hun, 494; *Martin* v. *T. A. R. Co.*, 27 App. Div. 52; *Weiss* v. *M. Ry. Co.*, 33 App. Div. 221.) The trial court committed error in refusing to charge the jury that the plaintiff's intestate "was not permitted to take even doubtful chances as to whether there was sufficient opportunity to cross." (*McClain* v. *B. H. R. R. Co.*, 116 N. Y. 459; *Harvey* v. *N. El. R. R. Co.*, 35 App. Div. 307; *McCann* v. *N. Y. & Q. C. Ry. Co.*, 56 App. Div. 419; *Clancy* v. *T. & L. R. Co.*, 88 Hun, 496.) The trial court committed error in refusing to charge the jury "that as the car approached from behind it was the duty of Mr. Rider to use reasonable diligence in getting off from the tracks and giving the car an opportunity to pass." (*O'Neil* v. *D. D., E. B. & B. R. R. Co.*, 129 N. Y. 125; *Adolph* v. *C. P., N. & E. R. R. R. Co.*, 76 N. Y. 530; *Johnson* v. *B. H. Ry. Co.*, 34 App. Div. 271; *McCann* v. *N. Y. & Q. C. Ry. Co.*, 56 App. Div. 419.) The trial court commited error in refusing to instruct the jury "that in case they should find that Mr. Rider was guilty of negligence in driving upon the tracks as he did, that there could be no recovery in this case." (*Weston* v. *City of Troy*, 139 N. Y. 281, 282; *Whalen* v. *C. G. L. Co.*, 151 N. Y. 70; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 41; *Haley* v. *Earle*, 30 N. Y. 208; *Wilds* v. *H. R. R. R. Co.*, 24 N. Y. 430; Thomp. on Neg. §§ 172, 176; *Brown* v. *M., etc., R. R. Co.*, 22 Minn. 165; 1 S. & R. on Neg. [5th ed.] § 96;

*Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 65, 69 ; *Schneider* v. *S. A. R. R. Co.*, 133 N. Y. 583 ; *Pollett* v. *Long*, 56 N. Y. 200 ; *Thompson* v. *B. Ry. Co.*, 145 N. Y. 196 ; *Davenport* v. *B. H. R. R. Co.*, 100 N. Y. 632.) The trial court committed error in charging the jury that the plaintiff might recover, notwithstanding the fact that her intestate was guilty of negligence which would really bring about the result complained of. (Thomp. on Neg. § 217; 7 Am. & Eng. Ency. of Law [2d ed.], 373, 381 ; *Goodman* v. *M. S. R. Co.*, 63 App. Div. 84 ; *Davies* v. *Mann*, 10 M. & W. 546 ; *Austin* v. *N. Y. S. Co.*, 43 N. Y. 75 ; *Distler* v. *L. I. Ry. Co.*, 151 N. Y. 424, 429 ; *McKeon* v. *S. Ry. Co.*, 20 App. Div. 601.)

*Frank C. Sargent* for respondent. There was no error in the refusal to charge that at the place where this accident occurred the rule of law which applied with reference to intersecting streets did not apply, and that at this place the defendant had a paramount or superior right to the use of the street upon that portion occupied by its tracks for the operation of its car. (*Lawson* v. *M. S. Ry. Co.*, 40 App. Div. 307 ; 166 N. Y. 3 ; *Brozek* v. *S. Ry. Co.*, 10 App. Div. 360 ; 161 N. Y. 63 ; *Raymond* v. *Richmond*, 88 N. Y. 671.) The trial court made no error in the refusal to charge that at the place where Mr. Rider started to cross the tracks he had no right to assume that the defendant's car would stop or slacken its speed for the purpose of permitting him to cross. (*Newson* v. *N. Y. C. & H. R. R. R. Co.*, 29 N. Y. 383.) The trial court made no error in the charge with reference to the negligence of Mr. Rider, plaintiff's intestate, in case he drove upon the track when the car was anywhere from thirty-five to eighty feet away, as to the exercise of his judgment in that respect. (*Lawson* v. *M. S. Ry. Co.*, 40 App. Div. 307 ; 166 N. Y. 3 ; *Johnson* v. *R. Ry. Co.*, 61 App. Div. 12 ; *Buhrens* v. *D. D., E. B. & B. Ry. Co.*, 53 Hun, 571 ; 125 N. Y. 702 ; *Wiard* v. *S. R. T. Ry. Co.*, 169 N. Y. 24 ; *Smith* v. *M. S. Ry. Co.*, 7 App. Div. 253 ; *Brozek* v. *S. Ry. Co.*, 10 App. Div. 360 ; 161 N. Y. 63 ; *Moebus* v. *Herrmann*, 108 N.

Y. 354; *Belton* v. *Baxter*, 58 N. Y. 411; *Wells* v. *Higgins*, 132
N. Y. 459; *McGinley* v. *U. S. L. Ins. Co.*, 77 N. Y. 495.)
The trial court did not err in its refusal to charge that as the
car approached from behind, it was the duty of Mr. Rider to
use reasonable diligence in getting off from the tracks. (*Bro-
zek* v. *S. Ry. Co.*, 161 N. Y. 63.)    The trial court made no
error in the charge in instructing the jury that the plaintiff in
this case was entitled to recover, irrespective of the question
as to whether plaintiff's intestate was guilty of negligence in
going upon the street car track in the first instance. ( *Wells*
v. *Higgins*, 132 N. Y. 459; *Adams* v. *I. Nat. Bank*, 116 N.
Y. 606; *Brozek* v. *S. Ry. Co.*, 161 N. Y. 63; *McGinley* v.
*U. S. L. Ins. Co.*, 77 N. Y. 495; *Bishop* v. *Vil. of Goshen*,
120 N. Y. 337; *Sterrett* v. *Third Nat. Bank*, 122 N. Y. 659;
*Costello* v. *T. A. R. R. Co.*, 161 N. Y. 322; *Wall* v. *N. Y.
C. & H. R. R. R. Co.*, 56 App. Div. 599; *McKeon* v. *S. R.
Co.*, 20 App. Div. 601; *Witzman* v. *N. E. R. R. Co.*, 33
App. Div. 585.)    There was no valid exception taken to that
part of the charge which instructs the jury that if they should
find certain facts, under certain circumstances there might be
a recovery in this case, notwithstanding the fact that Mr. Rider
was guilty of negligence in driving upon the tracks. ( *Wells* v.
*Higgins*, 132 N. Y. 459; *Adams* v. *I. Nat. Bank*, 116 N. Y.
606; *Brozek* v. *S. R. Co.*, 161 N. Y. 63; *McGinley* v. *U.
S. L. Ins. Co.*, 77 N. Y. 495; *Bishop* v. *Vil. of Goshen*,
120 N. Y. 337; *Sterrett* v. *T. Nat. Bank*, 122 N. Y. 659;
*Costello* v. *T. A. R. R. Co.*, 161 N. Y. 322; *Wall* v. *N.
Y. C. & H. R. R. R. Co.*, 56 App. Div. 599; *McKeon*
v. *S. R. Co.*, 20 App. Div. 601; *Witzman* v. *N. El. R. R.
Co.*, 33 App. Div. 585.)    Plaintiff's intestate was not guilty
of contributory negligence, in driving upon the street car
tracks, under the facts disclosed by the evidence in this case.
(*Lawson* v. *M. S. R. Co.*, 40 App. Div. 307; 166 N. Y. 3;
*Johnson* v. *R. Ry. Co.*, 61 App. Div. 12; *Buhrens* v. *D. D.,
E. B. & B. R. Co.*, 53 Hun, 571; 125 N. Y. 702; *Brozek*
v. *S. R. Co.*, 10 App. Div. 360; 161 N. Y. 63; *Wiard* v. *S.
R. T. R. Co.*, 169 N. Y. 24.)

O'BRIEN, J.   The plaintiff recovered a verdict of five thousand dollars against the defendant in an action wherein the latter was charged with negligently causing the death of George H. Rider, the plaintiff's husband and intestate, on the 17th of December, 1900.   It is alleged that the deceased, who was riding in a covered delivery wagon, while crossing over defendant's street car tracks at the intersection of two streets, was struck by one of defendant's electric cars, which caused him to be thrown to the pavement in such a severe and violent manner as to subsequently cause his death.   The judgment entered upon the verdict has been unanimously affirmed by the Appellate Division, and, hence, the only questions presented by the appeal are those raised by exceptions to the charge of the learned trial judge as made, and to his refusal to charge as requested by defendant's counsel.

The case was tried and submitted to the jury upon the theory that even though the deceased had been guilty of contributory negligence in driving upon the track under the circumstances disclosed by the evidence, yet such negligence on his part would not bar a recovery if the jury found that the accident could have been avoided by the motorman in charge of the car.   In other words, the charge of the court, in substance, was that although deceased negligently drove upon the railway track, yet the plaintiff could recover if the jury was satisfied that the motorman, upon seeing that the deceased was about to cross, could, by the exercise of reasonable care, have brought the car to a stop before the collision which resulted in the injury.

In order to clearly disclose the theory upon which the case was submitted to the jury, it will be necessary to state the substance of the charge.   The learned trial judge stated that assuming the plaintiff's evidence to be correct as to where the car was when the deceased attempted to cross the track, which was from thirty-five to eighty feet back of him, he was chargeable with knowledge that it was there, and the act of the deceased being such as to show an intention to cross the street, the rule of law was that if then, in view of that distance of the

car, he had reasonable ground to suppose that he could cross in safety, he would not be chargeable with contributory negligence as matter of law, and it would be the duty of the motorman to furnish him a reasonable opportunity to cross. That if the jury should find that he did, in view of that distance, have reasonable ground to believe that he could cross in safety, and if then the motorman did not afford him a reasonable opportunity to cross, the jury would have the right to say that he was negligent, and that if such negligence was the cause of the accident, that would furnish a basis of liability against the defendant. He also called the attention of the jury to the evidence on the part of the defendant which tended to show that the car was only fifteen or twenty feet away when the deceased started to cross, and that if such was the fact the deceased ought not to have attempted to cross. The car was moving at the rate of six to nine miles an hour, and if under these circumstances the deceased attempted to drive upon the track in front of the car only fifteen feet away, he was chargeable with negligence.

He further instructed the jury, substantially, as follows: Assuming that the deceased was careless or guilty of negligence in trying to cross the track when the car was so close that he knew, or ought to have known, that he would be hurt if the car kept on at the ordinary speed, still it did not follow that there could be no recovery against the defendant, for the law is that if there had been negligence on the part of the deceased that would really bring about the result, still if the defendant could, in the exercise of reasonable care, have avoided the accident, it was its duty to do so. "It is a question whether in such a case the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence, and in this case the question is whether when it became apparent to the car driver that the decedent had the intention of crossing, and was in the act of crossing, if at that time the car was at such a distance that if managed with the exercise of ordinary and reasonable care, the collision could have been avoided, there

10

would be a basis for saying that the defendant was still liable, although the man was negligent in trying to cross the track."

The only basis for this theory of the case is found in the evidence upon the part of the plaintiff which tends to show that the deceased did not sustain the injury at the very moment that the car came in contact with the vehicle, but that it struck the rear end of the carriage and then carried it for some distance along the track, when it was overturned and thus the injury resulted. This accident differs from all such accidents at street crossings only in this respect, that the injury was not inflicted upon deceased at the instant when the car struck the vehicle, but after carrying it forward upon the track for a distance, which it is claimed by plaintiff to be from twenty-five to forty feet, the carriage was overturned and the driver injured. It is claimed on the part of the plaintiff that the motorman could have stopped the car within the space of eight feet of the vehicle, while on the part of the defendant the evidence tended to show that it could not be stopped in less than from fifty to sixty feet. It will thus be seen that the case turned largely, if not entirely, upon the ability of the motorman to stop a car moving at the rate of from six to nine miles an hour before the collision and before the carriage, in which the deceased was riding, was overturned.

The defendant's counsel excepted to the charge of the court with reference to the negligence of the deceased in case he drove upon the track when the car was anywhere from thirty-five to eighty feet away, and he requested the court to charge that he was not permitted to take even doubtful chances as to whether there was sufficient opportunity for him to cross. The court declined to charge that proposition and the defendant's counsel excepted. The defendant's counsel also excepted to that part of the charge wherein the jury were instructed that there might be a recovery notwithstanding the fact that the deceased was guilty of negligence in driving upon the tracks, and he asked the court to instruct the jury that in case they should find the deceased guilty of negligence in driving upon the tracks as he did, that there could

be no recovery in the action. The court refused to so charge and the defendant's counsel excepted. It will be seen, therefore, that the jury were permitted to find a verdict against the defendant, notwithstanding any negligence on the part of the deceased in driving upon the tracks, provided that they could find that the motorman could have stopped the car before it upset the carriage in which the deceased was riding.

The general rule is that in an action to recover damages for personal injuries founded upon negligence it is incumbent upon the plaintiff to prove negligence on the part of the defendant, and the absence of contributory negligence on the part of the. injured party. The courts have, however, engrafted upon this rule an important exception, which the learned trial judge evidently sought to apply to the facts in the case, and that is, that the contributory negligence of the injured party, which will bar an action in his behalf, must be the proximate and not a remote contributing cause of the injury. The plaintiff's contributory negligence, it is said, must not only be a contributing cause, but a proximate and not a remote cause of the injury. The proximate cause of an event must be held to be that which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred. The plaintiff's fault will not affect his cause of action unless it proximately contributed to his injury. It must be a proximate cause in the same sense in which the defendant's negligence must have been a proximate cause in order to give a right of action. (Shearman & Redfield on Negligence [4th ed.], §§ 26, 94, and notes.) Contributory negligence, however great, is no defense to an action for damages for an injury which was reckless, willful or wanton. When the negligence of the deceased is but a remote cause, or antecedent of the injury, while the negligence of the defendant is made the proximate cause of it, then the plaintiff will not be debarred from prosecuting his claim by his negligence, nor will the defendant be excused from the consequences of his. (2 Thomp. on Neg. § 1995, and notes.)

The question in this case is whether this rule can be applied to the facts here in any reasonable or practical way. The contributory negligence of the injured party cannot be taken from the jury except in cases where it is clear that there was some new act of negligence on the part of a defendant that was the proximate cause of the injury. The negligence of the deceased, if any, was substantially concurrent with that of the defendant, if any. It is impossible to separate that part of the transaction which took place after the first contact of the car with the vehicle from what took place before. It was all one transaction, and to attempt to divide it into fragments and impute one part of it to the negligence of both parties and another part to the defendant's negligence alone would, as it seems to us, entirely subvert the law of contributory negligence as applied to accidents of this character. If the theory upon which this case was tried and submitted is to be sanctioned, it must, we think, follow that in every case based upon such an accident, the result must turn not upon the general rule as stated, but upon the exception; or, in other words, the inquiry must be not whether the injured party was negligent, but whether it was reasonably possible for the defendant to have avoided the accident. It does not seem to us that the exception to the general rule in cases of this character was properly applied to the facts in this case. There is no doubt that it is a well-recognized exception to the general rule, but its application will be best illustrated by a reference to some of the leading cases upon the subject.

One of the leading cases in the English courts is *Davies* v. *Mann* (10 M. & W. 546). The plaintiff sued the defendant for killing a donkey which the former had fettered and turned into a highway to graze. It appeared at the trial that the plaintiff having fettered the forefeet of the donkey, turned it into a public highway, and at the time of the accident the donkey was grazing on the off side of a road about eight yards wide, when the defendant's wagon, with a team of three horses, coming down a slight descent at what the witness termed a smartish pace, ran against the donkey, knocked it

down, and the wheels passing over it, it died soon after. The donkey, as already stated, was fettered at the time, and it was proved that the driver was some little distance behind the horses. The learned judge instructed the jury that, though the act of the plaintiff in leaving the donkey on the highway so fettered as to prevent his getting out of the way of carriages traveling along it might be illegal, still if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable, and the jury found a verdict for the plaintiff. Upon a review of the case it was held that the instructions of the trial judge were correct, the court holding that "although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so a man might justify the driving over goods left on a public highway or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road." So that all the case decides is that the negligent act of the owner of the donkey in turning it fettered into the highway to graze some days before the injury was the remote, but not the proximate cause of its death. This case is a good illustration of what is meant by the exception to the general rule, since it appears that, although the owner of the animal was originally negligent in turning it into the road, yet this negligence was only a remote and not a proximate cause of the injury.

The rule and its application is illustrated in the case of *McKeon* v. *Steinway Ry. Co.* (20 App. Div. 601). In that case it appeared that the injured party drove his horse and truck up to the doorway of his employer's house, and, finding the gate locked, with a view of departing, so backed up his horse into the street that the rear end of the truck projected over the eastern-bound track of the defendant's trolley railroad in that street. He then saw an approaching car upon the track and proceeded to get upon the wagon to drive away. Before he was able to do so the car collided with the rear end

of the wagon, causing the horse to run away. The plaintiff was thrown from the wagon when upwards of two hundred feet from the place of collision and fell upon the same track. He was then unconscious and was injured by another car of the defendant going in the same direction a few minutes later. Two young daughters of the plaintiff, seeing the condition of the horse and wagon, looked for and discovered the plaintiff on the track. One of them, while making an ineffectual effort to pull him from the track, saw the approaching car, and both of them screamed. Their screams were heard by the motorman and some others on the car, which did not stop until after it had struck the plaintiff and had passed the place where he was lying. The court reversed the judgment in favor of the defendant, and Judge Bradley stated the principle applicable to the case in these words : " The negligence of a plaintiff, which is effectual to relieve a defendant from liability for the consequences of his negligence, must be proximate in such sense as to contribute concurrently to the result complained of. Although the injury may not have occurred but for the negligence of the former, his antecedent negligence may not be concurrent or simultaneous in such sense as to relieve the latter from the consequences of his negligence." It will be seen that that case turned upon the point that, although the driver of the truck might have been originally guilty of negligence in backing up on the railroad track, yet that negligence was the remote cause of the injury only and not concurrent or simultaneous with that of the defendant. In other words, after the negligence of the injured party there was a change in the situation and a new act of negligence was imputable to the motorman, which the court held to be the proximate cause of the injury.

In *Wasmer* v. *Del., L. & W. R. R. Co.* (80 N. Y. 212) it appeared that the plaintiff's intestate was killed by a collision with one of the defendant's cars while he was engaged in securing his horse and wagon, which had run upon the track from a point in the street where he had negligently left it. Here it will be seen that the negligence of the deceased con-

sisted entirely in leaving the horse and wagon in the street. The deceased, when injured, was upon the railroad trying to catch his horse, which had run away, and it was shown that the railroad could have avoided the accident by the exercise of reasonable care on the part of the engineer, who saw the deceased and his horse upon the track in time to avoid the accident. There the negligent act of the deceased consisted entirely in allowing his horse to stand in the street untied, hitched to a wagon, which resulted in the horse becoming frightened and running away. He followed the horse and wagon and found them on the railroad track, and while attempting to secure them the train ran upon them when he was in full view, and it could have been stopped in time to avoid the accident, and so it was properly held that the negligence of the deceased in leaving the horse untied was the remote and not the proximate cause of the injury, while the act of the engineer of the train in running upon him when so engaged, and when he could have been discovered in time to stop the train, was the sole proximate cause of the injury. The principle is frequently illustrated by the case of an intoxicated person who lies down upon a railroad track when no train is in view. That is unquestionably a negligent act, but if he is injured by a passing train, after being discovered by the engineer in time to stop the train and avoid injuring him, then the injury may be imputed solely to the negligence of the railroad, as the sole proximate cause, his own negligence being so remote as not to preclude a recovery. If, however, the same person had gone upon the track in full view of an approaching train when there was no reason to suppose that his presence could be discovered by the engineer in time to control the train and avoid injuring him, then the act of the injured party would be regarded as the proximate contributing cause of the injury and a bar to any recovery.

But we are unable to see how this exception to the general rule, as illustrated by the cases cited, can be applied to the facts of this case where there was no claim that the motorman acted willfully or recklessly. The claim is that he could

have stopped the car within the space of eight feet and thus avoided the result of the negligence of the deceased.  The negligence, if any, was substantially concurrent with that of the motorman, if he was negligent at all.  The whole collision was the work of but a moment of time, and to attempt to separate what took place before the contact of the car with the vehicle from what took place afterward would be to create distinctions and refinements that in the end would practically abrogate the rule in such cases that the injured party cannot recover when his negligence is a contributing cause of the injury.  In this case, if the deceased was in fact negligent in driving upon the track, when the approaching car was so near as to render the act dangerous, then such negligence cannot be regarded as remotely connected with the accident within the meaning of the rule stated, but a proximate concurrent cause which precludes a recovery.  Unless the character of the accident is such that it can be fairly said that the negligence of the injured party is but a remote cause, the exception is not applicable.  It is admitted that upon the assumption that the act of the deceased in driving upon the track was negligent, there could be no recovery if the injury resulted from the first contact of the car with the wagon.  But since it did not, and the pressure of the car upon the wagon was not relaxed until some inappreciable space of time thereafter, when the horse and wagon were carried forward for some distance, the negligence of the deceased could be eliminated from the inquiry and the defendant held liable, upon the sole ground that the motorman was negligent in not bringing the car to a stop before he did.  In other words, that under such circumstances the negligence of the motorman was the sole proximate cause of the injury, while that of the deceased was too remote to operate as a defense.  This theory left nothing to the jury but the conduct of the motorman, based upon nice calculations as to the distance of the car from the crossing when the deceased turned to drive upon the track, the speed of the car and the ability of the motorman to stop it in a

moment of time. The practical result of this theory is to hold that at the moment of the first contact the negligence of the deceased was proximate and contributory, while a moment afterwards it became remote and immaterial. This involves a refinement of reasoning and a process of speculation that is scarcely practical or possible in the determination of the rights of parties in controversies of this character. It permitted the jury to divide a transaction which was in itself indivisible, and to attribute the injury to the conduct of the motorman after the first contact without regard to the negligence of the driver in creating the situation.

It was, we think, a mistaken application of the doctrine that a remote act of the injured party, though negligent, does not bar a recovery for the injury, since there was no place for its proper application to the facts of the case. There must undoubtedly be a causal connection between the negligence of the injured party and the injury itself, but his fault is deemed to be the juridical cause of the injury when it consists of such an act or omission on the part of a responsible human being as in ordinary and natural sequence immediately results in such injury. This is what is meant by the term *proximate cause* in any inquiry as to the connection of the negligent act with the resultant injury. We may not confound the act with its execution, nor the entire act with the last part or the final consummation, and by that means make the immediate cause the remote cause. (Wharton on Neg. 1874, §§ 73, 155, 323.) The defendant's responsibility could not have been determined by looking merely at the consummation of the injury, but the transaction should be viewed in its entirety, and if the deceased was guilty of negligence its effect upon the right of action could not be eliminated from the case after the first contact of the car with the wagon.

We recognize fully the force of the rule that the negligence of the injured party is no defense to an action in his behalf when such negligence is connected with the accident only in some remote way and is not a proximate concurrent cause. But this rule, or rather this exception to a general rule, has no

application to a case like the one at bar, where the act of the deceased and the conduct of the motorman were substantially concurrent, and where it is practically impossible to separate the conduct of the injured party in driving upon the track from the injury itself. Therefore, we think that in so far as the learned trial court refused to charge that if the jury found that the deceased was negligent in going upon the track as he did, there could be no recovery, and that he was not permitted to take doubtful chances as to whether it was safe to cross, the ruling was erroneous and the request should have been charged.

The question of remote and proximate cause in actions of negligence opens a favorable field for refined and speculative reasoning, as will be seen from the discussions to be found in the books, much of which seems to border closely on casuistry. But there are some general principles as to which all agree that will furnish a safe guide in the solution of the questions presented by this appeal. One is, that in determining whether the cause of the accident is proximate or remote, the same test must be applied to the conduct of the injured party as is to be applied to the defendant. The conduct of the latter cannot be judged by one rule and that of the former by some other rule. If in this case the motorman had been injured by the collision instead of the driver of the wagon, and the former had sued the latter for the injury, and the court had refused to charge that the motorman could not recover if his want of due care in the management of the car contributed to the injury, we would then have practically the same question as we have now, and I venture to suggest that there would then be little doubt with respect to the view the court would take in regard to an exception to such a ruling. Assuming that the driver negligently drove upon the track, and at the first moment of contact of the car with the wagon the motorman was killed or injured, could there be a recovery in his behalf irrespective of his neglect to manage the car with due care? Would it then be said, as it is now, in regard to the driver, that though the motorman was negligent, yet it was only the

remote and not the proximate cause of the injury? It is also the settled rule in all actions of negligence that where several proximate causes contribute to an accident and each is an efficient cause, without which the accident would not have happened, it may be attributed to all or any of them, but it cannot be attributed to a cause unless without its operation the accident would not have happened. (*Ring* v. *City of Cohoes*, 77 N. Y. 83; *Taylor* v. *City of Yonkers*, 105 id. 202; *Searles* v. *Manhattan Ry. Co.*, 101 id. 661; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 id. 90.) Assuming that the act of the deceased in driving upon the track in view of the approaching car was at least one of the causes of the accident without which it would not have happened, it is difficult to see why the defendant's counsel was not entitled to have the court charge the request as made. The question in this case turns upon the exception taken to the refusal of the learned trial judge to charge the general rule that the contributory negligence of the injured party will defeat a recovery. Conceding, as we do, that in some cases it will not, we do not think that this is such a case. It cannot reasonably be asserted that there was any new act of negligence on the part of the motorman that could deprive the defendant of the benefit of the general rule.

In the discussion to be found in the books upon this question, some expressions are used which, when applied to the facts of this case, are quite misleading. It is often said that a railroad may not run into a party though he is on the track through his own negligence, or run over him or run him down. No one questions that proposition when we bear in mind that these expressions imply a willful act, or at least an act which clearly might have been avoided by the exercise of due care. It would be somewhat of an exaggeration to apply these expressions to the facts of this case. The motorman did not run into the driver of the wagon or run over him or run him down, within any fair or proper meaning of those terms as used in the law of negligence. What happened was this: The driver attempted to cross the track diagonally when the

approaching car was so near as to render the attempt danger-
ous. He took the chances on the alertness of the horse and
his own capacity to so manage him as to get out of the way of
the car. The motorman had reason to believe that the driver
would succeed, so he did not stop the car, but took some
chances just as the driver did; and it turned out that they
both made a mistake in their calculations, since the hind wheel
of the wagon did not get entirely over the track when the car
collided with it. A few inches more and the wagon would
have cleared the track, and it is probable that these few inches
were lost by the diagonal course that the driver took. To say
that under such circumstances the motorman ran the driver
down or ran into him or ran over him is simply to describe an
accident in very extravagant language. But it is said that
such was the finding of the jury and such the import of the
verdict. Grant that all that is so, still the fact remains that
they reached that conclusion under a charge from the court
which permitted them to disregard entirely the negligent con-
duct of the driver in taking such chances as he did and to
consider only the question whether it was reasonably possible
for the motorman to avoid the consequences of the driver's
negligence. The case was thus made to turn upon the mis-
take of the motorman in assuming that the driver would get
out of the way in time, and the conduct of the driver in going
upon the track in the immediate presence of danger was
thus eliminated from the case.

The form in which the case comes here is somewhat embar-
rassing. While the learned court below unanimously affirmed
the judgment, it certified that there were questions of law
involved which should be reviewed in this court, but there was
no opinion, and hence we have not the benefit of the views of
the court in regard to any of the questions in the case. All
the questions of law presented by the record are involved in
the exceptions which we have considered. In view of the
plaintiff's theory that after the first contact of the car with
the wagon it still kept up the speed and carried both the
wagon and the horse farther on upon the track to the extent of

forty feet or more, and then for the first time injured the deceased, there was a fair opportunity for the court below to reverse upon the facts in view of the evidence upon this point.   But we must take the case as we find it, and, as the court unanimously affirmed the judgment, the sufficiency of the proof to support the plaintiff's theory of the facts cannot be considered.   The exceptions, however, fairly presented the question whether the contributory negligence on the part of the deceased, that is to say, his act in driving upon the track, if negligent, was, under the circumstances of the case, a defense to the action, and, since we think there is nothing in the case to take it out of the operation of the general rule, the defendant was entitled to have the jury so instructed.

The judgment should be reversed and a new trial granted, costs to abide the event. .

Vann, J. (dissenting).   In giving my reasons for dissenting from the conclusion reached by the majority of the court, I will first state some of the leading facts, which the jury is presumed to have found.   On the 17th of September, 1900, at about 6 p. m., George H. Rider, the plaintiff's intestate, was seated in a covered delivery wagon, slowly driving a single horse southerly on the west side of the double tracks of the defendant's railroad in Cortland avenue, Syracuse. As he approached a street which intersects said avenue at an acute angle, he turned to the east, going diagonally across the tracks, in order to enter Raynor avenue.   The grade at this point was practically level, the rails were dry and the street in good order.   As he started across, he looked back to the north toward a car of the defendant approaching from behind, which was then from 35 to 100 feet away, according to the varying estimates of the different witnesses.   After looking toward the car, he whipped his horse with the lines, but before he got across the tracks, the car struck the wagon in the rear as it was moving in a diagonal direction to the east.   The motorman, as his car came up to the wagon, was looking in the face of a man stand-

ing on the front platform with whom he was engaged in conversation. The car was moving at the rate of 6 or 8 miles an hour and the motorman made no effort to check its speed until about the time of the collision. He was then moving so slowly that when he hit the wagon, it was not overturned at first, but was shoved along on the track. The horse fell, sprang up, jerked himself loose and ran away. Although the danger of Mr. Rider was obvious to the motorman and he could have stopped the car within 8 feet, as there was evidence tending to show, he did not stop, but kept shoving the wagon along for a distance of 20 or 30 feet, when it tipped over. After thus capsizing the wagon, the car kept on for from 5 to 15 feet farther, shoving the wagon along on its side, before it stopped. When the wagon was overturned, Mr. Rider fell out, the wagon fell upon him, and he was under it as it was shoved forward on the track by the advancing car. When the car stopped, his right arm was through the front wheel of the wagon, his left arm was caught in the fender of the car, his skull was fractured and he soon died from the injuries thus received.

The question presented is, whether the plaintiff can recover, even if her intestate was negligent in driving upon the tracks, provided, after he had thus reached a place of danger, the defendant, by the exercise of reasonable care, could have avoided running over him?

Passing by the conflict in the evidence, as to whether the deceased was negligent in getting on the track and assuming that he was negligent in this respect, it does not follow that the defendant was absolved from all care and could run over him with impunity. There was evidence tending to show that after the collision, the car, under the circumstances, could have been stopped in 8 feet, but it did not stop until it had shoved the wagon along for at least 20 feet to the point where it tipped over, and even then the car did not stop until it had shoved the wagon on its side with the deceased under it, for 15 feet farther, as we must assume the jury found. Can we say, as matter of law, that the motorman was justified in not

stopping the car, when a human life was in such imminent peril, and he could have stopped it in time to prevent the fatal result? Such a rule would be a reproach to jurisprudence and an encouragement to reckless conduct. As I understand it, our law is not subject to this imputation, but, on the other hand, the humane rule is in force that notwithstanding the previous negligence of the plaintiff, if, at the time when the injury was committed, it might have been avoided by the defendant by the exercise of reasonable care and prudence, an action will lie for the injury. (*Costello* v. *Third Ave. R. R. Co.*, 161 N. Y. 317, 322; *Bittner* v. *Crosstown St. R. Co.*, 153 N. Y. 76, 82; *Wasmer* v. *Del., L. & W. R. R. Co.*, 80 N. Y. 212; *Silliman* v. *Lewis*, 49 N. Y. 379; *Austin* v. *N. J. Steamboat Co.*, 43 N. Y. 75, 82; *Haley* v. *Earle*, 30 N. Y. 208; *Weitzman* v. *Nassau El. R. R. Co.*, 33 App. Div. 585; *McKeon* v. *Steinway Ry. Co.*, 20 App. Div. 601; *Bump* v. *N. Y., N. H. & H. R. R. Co.*, 38 App. Div. 60; affirmed on opinion below, 165 N. Y. 636; *Kenyon* v. *N. Y. C. & H. R. R. R. Co.*, 5 Hun, 479; *Radley* v. *L. & N. W. R. Co.*, L. R. [1 App. Cas.] 154; *Davies* v. *Mann*, 10 M. & W. 546; *Isbell* v. *N. Y. & N. H. R. R. Co.*, 27 Conn. 393, 404; *Trow* v. *Vt. C. R. R. Co.*, 24 Vt. 487, 495.)

If the decedent had been injured at the time that the car first came in contact with the wagon, then, upon the assumption that he was negligent in getting on the tracks, there could have been no recovery. His own negligence in that event would have been a concurring, and, hence, a proximate cause, even if the defendant had negligently run against the wagon. But the injury was not inflicted when the car struck the wagon. A new act of the defendant, committed after the first contact, was the cause of the injury. It was the shoving of the wagon along, after the motorman knew of the decedent's peril, without stopping, when by the use of due care he could have stopped in time to save him, that caused his death.

If the negligence of the decedent was the remote, and the negligence of the defendant was the proximate cause of the

accident, it is conceded that the plaintiff was entitled to recover. Causes are not measured by time but by events. A proximate cause, juridically considered, is an efficient act of causation with no cause intervening before the effect, while a remote cause is one that is separated from the effect by an intervening cause. The law looks at the proximate cause only. *In jure non remota causa, sed proxima spectatur.* What was the proximate cause of the injury in question? It was the failure of the motorman to stop his car, after he saw that it had collided with the wagon, in time to prevent the accident. When the car came in contact with the wagon, it was his duty to stop as soon as he could, and he could have stopped in eight feet, as the jury is presumed to have found, upon sufficient evidence. He not only failed to stop, but he shoved the wagon along for more than three times the distance within which he could have stopped, and the death of the intestate was the natural and probable result. The fact that he had time to stop but did not, shows that the negligence of the decedent and that of the motorman were not concurrent. The one preceded the other by time enough for the motorman to discharge the duty of prompt action, which the circumstances required. The negligence of the motorman intervened between the negligence of the decedent and the infliction of the injury, and thus became the proximate cause thereof. The negligence of the decedent was remote, as, between it and the injury, another cause intervened, without which the injury would not have been inflicted. The law regards the last cause, without which the accident could not have happened, as the proximate cause. If the motorman had time, after he knew that the decedent was in a dangerous situation, to think and act and thereby prevent the casualty, the jury could find him guilty of negligence, and that negligence being nearest to the time of the injury was proximate and not remote. The prior negligence of the deceased did not excuse the subsequent negligence of the motorman, nor make the latter a remote cause of the accident, because he had the last clear chance to avoid the sacrifice of life. While but

few seconds intervened between the two causes, they were as effective, as so many hours would have been, to make the latter cause proximate, provided there was time enough to exercise the care, which would have prevented the later cause from coming into existence.

As we recently held in an important case : " The proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred ; and the act of one person cannot be said to be the proximate cause of an injury when the act of another person has intervened and directly inflicted it." (*Laidlaw* v. *Sage*, 158 N. Y. 73.)

In *Costello* v. *Third Avenue Railroad Co.* (*supra*), which is analogous in fact and principle to the case now before us, Judge BARTLETT said : " Even if contributory negligence is assumed, for the argument's sake, the question remains whether the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.  *  *  *  Was the plaintiff's alleged contributory negligence the direct proximate cause of the accident ?  It was for the jury to say whether this injury of the plaintiff would have happened if the motorman had vigilantly discharged his responsible duties in the premises." (p. 322.)

In a late case in the Supreme Court of the United States it was held that " Although the rule is that even, if the defendant be shown to have been guilty of negligence, the plaintiff cannot recover if he himself be shown to have been guilty of contributory negligence which may have had something to do in causing the accident; yet the contributory negligence on his part would not exonerate the defendant, and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence.  *  *  * The jury might well be of opinion that while there was some negligence on his part in standing where and as he did, yet that the officers of the boat knew just where and how he

11

stood, and might have avoided injuring him if they had used reasonable care to prevent the steamboat from striking the wharf with unusual and unnecessary violence. If such were the facts, the defendant's negligence was the proximate, direct and efficient cause of the injury." (*Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 558, 559.)

In a still later case the same court said: "Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years (having been first enunciated in *Davies* v. *Mann,* 10 M. & W. 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence." (*Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 429.)

The elementary writers are equally emphatic. "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. * * * It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort, in which this rule is any longer disputed; although the same rule, in substance, but inaccurately stated, has been made the subject of strenuous controversy. But, furthermore, the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was more immediately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put

a prudent man upon his guard; to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precaution as a prudent man would take under similar notice. This rule is almost universally accepted. The most reckless persistence, on the part of the one exposed to danger, will not justify another in consciously refraining from using care to avoid injury to him." (1 Shearman & Redf. on Negl. [5th ed.] § 99.)

So Mr. Wharton says : " It is not enough to say,   *   *   * that if the injury would not have occurred had it not been for the plaintiff's negligence, then the plaintiff's negligence is to be regarded as the cause of the injury. Of multitudes of antecedents can it be truly said, that if they had not existed the injury would not have occurred ; yet of how few of such antecedents can it be said that they juridically caused the injury." (Wharton on Negl. [4th ed.] 323.) In a later section the same author quotes with approval the following from the opinion in *Isbell* v. *N. Y. & N. H. R. R. Co. (supra)*: " A remote fault in one party does not of course dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demands this; and it is no answer for the neglect of it to say that the complainant was first in the wrong, since inattention and accidents are to a greater or less extent incident to human affairs. Preventive remedies must therefore always be proportioned to the case in its peculiar circumstances, to the imminency of the danger, the evil to be avoided, and the means at hand of avoiding it." (§ 340.) He further quotes with approval from *Trow* v. *Vt. C. R. R. Co. (supra)* as follows : " Therefore, if there be negligence on the part of the plaintiff, yet if, at the time when the injury was committed, it might have been avoided by the defendant, in the exercise of reasonable care

and prudence, an action will lie for the injury. So in this case, if the plaintiff were guilty of negligence, or even of positive wrong, in placing his horse on the road, the defend. ants were bound to the exercise of reasonable care and diligence in the use of their road and management of the engine and train, and if for want of that care the injury arose, they are liable." (§ 341.)

In Patterson's Railway Accident Law the following may be found: "That negligence upon the part of the plaintiff which bars his recovery from the defendant must have been a proximate cause of the injury, and it is not a proximate, but only a remote, cause of the injury, when the defendant, notwithstanding the plaintiff's negligence, might, by the exercise of ordinary care and skill, have avoided the doing of the injury." (§ 58.)

" Although a person be placed in peril by his own negligence, or that of another, yet the unoffending party must nevertheless use such care, under the circumstances, to prevent injury, as a person of ordinary prudence would usually exercise in the same predicament. \* \* \* If A. by his own negligence, be placed in a peril of injury from B., it is the duty of B., on discovering A.'s peril, to use in good faith whatever opportunity may be present to avoid injury to A. If B. neglect to do this, such neglect and not the previous neglect of A. will be regarded as the proximate cause of the injury, as then, for the first time, it may be, B. owes A. a duty to use some degree of care for his safety." (Thomas on Negl. 360.)

Judge Thompson lays down the rule in this form: "The sound principle, then, is that the defense of contributory negligence is not available where the defendant was guilty of the negligent act or omission subsequently to the time when he ought to have known that the negligence of the plaintiff, or of the person injured had created a position of peril." (Thompson on Negl. [2d ed.] § 232.) The learned author further says: " The courts are almost universally agreed that notwithstanding the fact that the plaintiff or the person injured

has been guilty of some negligence in exposing his person or property to an injury at the hands of the defendant, yet, if the defendant discover the exposed situation of the person or property in time, by the exercise of ordinary or reasonable care after so discovering it, to avoid injuring it, and nevertheless fail to do so, the contributory negligence of the plaintiff or the person injured does not bar a recovery of damages from the defendant." (§ 238.)

" The fact that one has placed himself in a position of danger can never be an excuse for another carelessly or recklessly injuring him. It may be said in such a case, the negligence of the plaintiff only put her in a position of danger, and was therefore only the remote cause of the injury, while the subsequent intervening negligence of the defendant was the proximate cause." (*Healey* v. *Dry Dock, E. B. & B. R. R. Co.,* 14 J. & S. 473, 481.)

I think that the negligence of the defendant was the " proximate " cause of the injury, as that word is understood by the courts and elementary writers, and that the defendant, after notice of the decedent's danger, could not negligently run him down, any more than it could willfully run him down. I regret that the court is about to lay down a rule, which will permit one man to negligently run over another, whenever the latter by his own negligence gets into a place of danger, even if the former discovers it in time to save him by using reasonable care. Such a rule puts life and limb in peril and withholds from the citizen the protection which it is the duty of courts to provide. My vote is in favor of affirmance.

PARKER, Ch. J., GRAY and HAIGHT, JJ., concur with O'BRIEN, J.; BARTLETT and MARTIN, JJ., concur with VANN, J.

Judgment reversed, etc.